# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MORRIS GRIFFIN (#702022)**                              **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                              **NO. 19-684-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on November 2, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MORRIS GRIFFIN (#702022)                                  CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                                     NO. 19-684-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed an opposition to the petitioner's application. *See* R. Doc. 17. There is no need for oral argument or for an evidentiary hearing.

On October 7, 2019 the *pro se* petitioner, an inmate confined at Louisiana State Penitentiary, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2015 criminal conviction and sentence for aggravated rape in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, State of Louisiana. The petitioner asserts: ("Claim 1") the trial court erred when it permitted a witness to testify as an expert, ("Claim 2") the trial court erred when it denied his post-verdict motion for a judgment of acquittal, ("Claim 3") the evidence was insufficient to support his conviction, and ("Claim 4") his right to testify was violated. The petitioner also asserts that his appellate counsel was ineffective because he failed to exhaust Claim 1 and Claim 2 on direct appeal.[1]

## Procedural History

In June of 2015 the petitioner was tried by a jury and found guilty of aggravated rape.[2] On August 5, 2015 he was sentenced to life imprisonment without the possibility of parole,

---

[1] As discussed herein, it is unclear whether the petitioner is asserting ineffective assistance of appellate counsel as a separate, substantive claim or as "cause" for procedural default.
[2] R. Doc. 7, pp. 29-34.

probation, or suspension of sentence.[3] The petitioner filed a direct appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"), in which he asserted Claim 1, Claim 2, and Claim 3. The First Circuit affirmed his conviction and sentence on April 27, 2016. *State v. Griffin*, 2015-1765 (La. App. 1 Cir. 4/27/16), 2016 WL 2840309. The petitioner did not seek further review with the Louisiana Supreme Court.[4]

On March 21, 2017 the petitioner filed an application for post-conviction relief ("PCR") *pro se* with the Eighteenth Judicial District Court.[5] The petitioner's application re-asserted the direct appeal claims and added Claim 4. The application was denied without explanation.[6] The petitioner requested written reasons, which were issued on July 25, 2018.[7] On March 14, 2018 the petitioner filed a motion asking for an extension on the return date to file a writ application with the First Circuit.[8] The petitioner advised the trial court in his motion that he never received notice that his post-conviction application had been denied and only learned about the order when he requested a status with the clerk of court.[9] The trial court granted the petitioner's request for an extension of the return date.[10] The petitioner's subsequent writ application was denied by the First Circuit on November 30, 2018:

> WRIT DENIED. The allegations presented in claims one, two, and three are procedurally barred as they were previously considered by this court on appeal. Relator failed to meet the criteria established in State v. Hampton for determining whether a defendant's right to testify was violated. Therefore, the district court

---

[3] R. Doc. 7, p. 11.
[4] The petitioner concedes in his reply brief that he did not file a petition for writ of certiorari with the Louisiana Supreme Court. R. Doc. 19, p. 3.
[5] R. Doc. 7, pp. 75-120.
[6] The date of the order, which was written on the first page of the petitioner's application, is unclear. R. Doc. 7, p. 77. The petitioner contends in a separate motion filed with the trial court that the order was signed on April 25, 2017. R. Doc. 7, pp. 65-66.
[7] R. Doc. 7, pp. 60-64; *Id.* at 55-57.
[8] *Id.* at 65-66.
[9] *Id.* at 65.
[10] *Id.* at 67.

did not err by not holding an evidentiary hearing and by not appointing counsel to represent relator during the postconviction proceedings.[11]

The Louisiana Supreme Court denied the petitioner's petition for a writ of certiorari on

September 17, 2019:

> Denied. Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2. The application is also repetitive. La.C.Cr.P. art. 930.4…[12]

As noted above, the petitioner filed the instant petition for habeas corpus relief on October 7,

2019.

## Timeliness

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are no properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while

---

[11] *Id.* at 54.
[12] *Id.* at 2.

the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

The respondents argue that the petitioner's application is untimely because he failed to file his post-conviction writ application with the First Circuit within thirty days of the trial court order denying his claims.[13] The respondents' argument is without merit. When the trial court extends the return date and the petitioner files his writ application within that deadline, the extended time suffices to keep the post-conviction process pending. *Leonard v. Deville*, 960 F.3d 164, 170-173 (5th Cir. 2020). Here, the trial court extended the return date for petitioner to file his writ application and the First Circuit did not reject his filing as untimely. Accordingly, his post-conviction process remained pending, and the statute of limitations remained tolled from the date the petitioner filed his application, March 21, 2017, until the Louisiana Supreme Court denied his petition for a writ of certiorari on September 17, 2019.

The First Circuit affirmed the petitioner's conviction on direct appeal on April 27, 2016. As the petitioner did not seek any further review, his conviction became final on May 27, 2016, upon the passage of time for the petitioner to seek appeal to the Louisiana Supreme Court (30 days).[14] 298 untolled days passed until the petitioner filed his application for post-conviction review with the Eighteenth Judicial District Court on March 21, 2017. As discussed above, the petitioner's post-conviction application remained pending and tolled the statute of limitations until the Louisiana Supreme Court issued its writ denial on September 17, 2019. An additional 20 untolled days passed until the petitioner filed the instant petition, resulting in a total of 318 untolled days. As less than a year elapsed during which the petitioner did not have any properly

---

[13] R. Doc. 17, p. 12.
[14] Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."

filed applications for post-conviction or other collateral review pending before the state courts, the petitioner's application is timely.

**Procedural Default**

A federal court cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted. *Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010). First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted. Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits, the claim has been decided on an independent and adequate state-law ground. *Id.* at 820.

The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack. *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987).

If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Rocha*, 626 F.3d at 820. The state procedural rule must be both independent of the merits of the federal claim and an adequate basis for the court's decision. A state procedural rule is an adequate basis for the court's

decision only if it is strictly or regularly applied evenhandedly to the vast majority of similar claims. *Id.* at 21.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent *Id.* at 822. Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*. Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that no reasonable juror would have convicted him in light of the new evidence. *See Reed v. Stephens*, 739 F.3d 753, 767 (5th Cir. 2014), citing *Woodfox v. Cain,* 609 F.3d 774, 794 (5th Cir. 2010).

The respondents argue that Claim 1, Claim 2, and Claim 3 are unexhausted because these claims were included in the petitioner's direct appeal, but the petitioner failed to seek a writ of certiorari with the Louisiana Supreme Court.[15] By his own admission, the petitioner failed to

---

[15] R. Doc. 17, p. 9.

seek discretionary review with the Louisiana Supreme Court.[16] The petitioner would now be prohibited from seeking review with the Louisiana Supreme Court and thus Claims 1, 2 and 3 are procedurally defaulted. *See* Supreme Court Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal").

The petitioner contends that he received ineffective assistance of appellate counsel because his attorney on direct appeal failed to file the petition for certiorari.[17] The state court includes a letter from the petitioner's appeal counsel in which she admits that she failed to forward the First Circuit decision affirming the petitioner's conviction in time for the petitioner to file a petition for a writ of certiorari.[18] It is unclear whether the petitioner is asserting a separate claim for ineffective assistance of appellate counsel and/or claiming that the alleged ineffectiveness should excuse his procedural default. The petitioner's claim fails under either interpretation.

A petitioner has a right to effective assistance of counsel only at trial and for all direct appeals the state grants as a matter of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). There is no constitutional right to counsel on discretionary appeals. *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987). In Louisiana, a petitioner only has a right to counsel on direct appeal to the intermediate courts of appeal because writs to the Louisiana Supreme Court are discretionary. *See United States v. Laday*, 2016 WL 9526450, at *1 (W.D. La. Sept. 29, 2016) (citing *United*

---

[16] R. Doc. 19, p. 3.

[17] R. Doc. 19.

[18] R. Doc. 7, pp. 128-129. As discussed herein, petitioner's counsel's failure to timely forward the decision cannot serve as cause to excuse procedural default. The record does not reflect any effort by the petitioner to seek an out-of-time petition for certiorari with the Louisiana Supreme Court after he received this letter from his appeal counsel. Any such effort would likely have been futile, as the Louisiana Supreme Court considers Rule X, Section 5(a), which sets the time limitation for filing an application for review of a judgment at thirty days, as jurisdictional. *See State v. Chester*, 2015-2304 (La. 12/16/16), 208 So.2d 338.

7

*States v. Vasquez*, 7 F.3d 81, 83 (5th Cir. 1993); *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995)) ("It is well settled that a criminal defendant has no constitutional right to counsel beyond his first appeal, or to counsel in habeas or other collateral proceedings.")

      Counsel's ineffectiveness can constitute "cause" in a proceeding where the petitioner has a constitutional right to counsel. *Coleman v. Thompson,* 501 U.S. 722, 752-53 (1991). Here, the petitioner had a constitutional right to counsel during his appeal to the First Circuit. However, appellate counsel's failure to timely forward the First Circuit decision to the petitioner cannot constitute "cause" to excuse his procedural default. Counsel errors must rise to the level of a Sixth Amendment violation and failure to timely forward the appellate decision is not ineffective assistance of counsel. *See Murray v. Carrier,* 477 U.S. 478 (1986); *Moore v. Cockrell*, 313 F.3d 880 (5th Cir. 2002) (constitutionally secured right to counsel ended when appellate court entered its decision affirming defendant's conviction, and thus appellate counsel's failure to timely notify defendant of outcome of his direct appeal could not amount to ineffective assistance).

      Appellate counsel's alleged failure to file the petition for certiorari also does not constitute cause. In proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a state prisoner's procedural default of a claim raised in a federal habeas petition. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022).

      Because the petitioner had no constitutional right to counsel during discretionary review at the Louisiana Supreme Court, he has no claim for ineffective assistance of appellate counsel for failure to file a petition for certiorari. Also, because the petitioner's right to counsel ended when the First Circuit decision was rendered, he had no constitutional right to counsel during discretionary review at the Louisiana Supreme Court, and any failures by his counsel cannot

serve as "cause" to excuse the procedural default on direct appeal. Accordingly, Claims 1, 2, and 3 are procedurally defaulted.[19]

The respondents also argue that all four of the petitioner's claims are procedurally defaulted through the independent and adequate state ground doctrine. The petitioner attempted to reassert Claims 1, 2 and 3 in his post-conviction application. The record reflects that when the petitioner appealed the denial of his post-conviction application, the First Circuit and the Louisiana Supreme Court recognized that these claims were barred by La.C.Cr.P. art 930.4(A) because the issues had been raised and addressed on direct appeal.[20] However, the Fifth Circuit has rejected the argument that La.C.Cr.P. art 930.4(A) is an independent and adequate state ground. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994). If the petitioner had not procedurally defaulted Claims 1, 2, and 3 by failing to pursue a writ of certiorari with the Louisiana Supreme Court on direct appeal, La.C.Cr.P. art 930.4(A) would not prohibit this Court from addressing these claims on the merits. *See Green v. Cooper*, 2009 WL 87590, at *7 (E.D. La. Jan. 8, 2009).

The respondents' argument that Claim 4 is procedurally defaulted fails. The record reflects that Claim 4 was adjudicated by the state courts on the merits and was not barred by an independent and adequate state ground.[21] Accordingly, the Court is not barred from reaching the merits of Claim 4.

---

[19] The petitioner has not invoked the "actual innocence" exception to procedural default. The content of the petitioner's pleadings does not indicate that he could meet the formidable standard for such a claim.

[20] R. Doc. 7, p. 54, 1-2.

[21] The First Circuit specifically noted that the petitioner failed to meet the legal standard on Claim 4. R. Doc. 7, p. 54. While the Louisiana Supreme Court stated that the petition was "repetitive," this reference appears to be adopting the First Circuit's conclusion that Claims 1, 2 and 3 were procedurally barred. The Louisiana Supreme Court writ denial also states, "Applicant fails to satisfy his post-conviction burden of proof." This statement appears to be adopting the First Circuit's conclusion that Claim 4 failed on the merits. R. Doc. 7, p. 2.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Factual Background**

The facts, as summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: The victim, S.G., was born on April 4, 2002. From approximately October of 2006 until June of 2012, S.G. and her mother lived next to the petitioner, S.G.'s uncle, in Pointe Coupee Parish. In September of 2012, S.G. disclosed to her mother that the petitioner had sexually abused her. In subsequent interviews and at trial, S.G. described that from ages seven to ten, she would occasionally spend the night at the petitioner's trailer. Multiple times over the course of these visits, the petitioner would perform oral sex on S.G., force her to perform oral sex on him, or touch her in other inappropriate ways. S.G. reported that the petitioner also showed her pornographic images and videos, and he threatened her with a gun never to tell anyone.

The petitioner did not testify at trial. After he was arrested, the petitioner gave a statement to the police in which he denied any wrongdoing, explaining that his only physical contact with S.G. were occasions when he would rub her back or hug her. *State v. Griffin*, 2015-1765 (La. App. 1 Cir. 4/27/16), 2016 WL 2840309 *1.

**Substantive Review**

In Claim 4, the petitioner contends that his right to testify was violated. The petitioner alleges that he informed his counsel that he wanted to testify, but his trial counsel felt that because the state had the burden of proof he did not need to testify. The petitioner also alleges that his trial counsel told him that the decision on whether he would testify would be made by trial counsel.[22] The petitioner contends that he was prejudiced because he could have told the

---

[22] R. Doc. 1-2, p. 40.

jury that he was innocent of the alleged rape.[23] As pointed out by the petitioner, the trial

transcript does not contain a colloquy in which he waived the right to testify on the record.[24]

      A defendant in a criminal case has the right to take the witness stand and to testify in his

or her own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). It is one of the rights that "are

essential to due process of law in a fair adversary process." *Id.* at 51. The right to testify in one's

own defense is protected by the Fifth Amendment's privilege against self-incrimination, the

Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process

clause. *Id.* at 51-53. When a defendant contends that trial counsel interfered with his right to

testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."

*United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d

631, 634 (5th Cir. 2001)).

      To establish that his legal representation at trial fell short of the assistance guaranteed by

the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that

his counsel's performance was both deficient (that counsel did not provide reasonably effective

assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually

had an adverse effect on the defense"). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir.

1994) (citing *Strickland*, 466 U.S. at 686-89, 693). The former component of the test authorizes

only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy. *See*

*Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689).  As to the latter component, it is

---

[23] *Id.* at 41.

[24] The state and the defense both rested on June 24, 2015 with no on-record colloquy with the petitioner about his right to testify. R. Doc. 9, p. 241.

not enough for the defendant to show that the errors had some conceivable effect on the outcome

of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. *See*

*Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption

that counsel's representation was within the wide range of reasonable professional assistance. *See*

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The

challenger's burden is to show that counsel made errors so serious that counsel was not

functioning as the counsel guaranteed by the Sixth Amendment. *See Richter*, 562 U.S. at 104

(*citing Strickland*, 466 U.S. at 687).

The trial court addressed Claim 4 in its written reasons denying the petitioner's post-

conviction application:

> Defendant claims that his counsel refused to allow him to testify during
> the trial. In *State v. Hampton*, 818 So.2d 720 (La. 2002), the Louisiana Supreme
> Court developed a test for determining whether a Defendant's right to testify was
> waived or violated:
>
> In determining whether a defendant's right to testify was violated or
> waived by his silence during trial, we can look to *Passos-Paternina v. United
> States*, 12 F.Supp.2d 231 (D.P.R. 1998) for guidance. As a guideline, the *Passos-
> Paterinina* court held: (1) absent extraordinary circumstances that should alert the
> trial court to a conflict between attorney and client, the court should not inquire
> into a criminal defendant's right to testify. The court should assume, that a
> criminal defendant, by not 'attempting to take the stand,' has knowingly and
> voluntarily waived the right; (2) the court must consider whether the petitioner
> has waived his right to testify…[The defendant can only] rebut the
> presumption…by showing that his attorney caused him to forego his right to
> testify [(a) by alleging specific facts, including an affidavit by the defendant's
> trial counsel] from which the court could reasonably find that trial counsel 'told
> [the defendant] that he was legally forbidden to testify or in some similar way
> compelled him to remain silent…'[(b) by demonstrating from the record] that
> those 'specific factual allegations would be credible…' *Id.* at 729-230.

    In this instance, defendant does not allege extraordinary circumstances that alerted the trial court as to the existence of a conflict between the Defendant and his attorney. Furthermore, Defendant's allegation that he was prevented from testifying at trial is not sufficient because it does not contain any sworn affidavit of specific facts indicating that he was deprived of his right to testify at trial.[25]

    To prevail on a claim that counsel was ineffective for preventing the petitioner from testifying he must put forward something more than his own conclusory assertions. *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) ("Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."). "Some greater particularity is necessary and…some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade the client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

    The petitioner does not present any evidence to support his conclusory allegation that his counsel prevented him from exercising his right to testify. Even assuming deficient performance, the petitioner must also show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *U.S. v. Mullins*, 315 F.3d 449, 457 (5th Cir. 2002). The petitioner offers no specific information about his testimony that would have changed the outcome of the trial; he only states that he would have told the jury he is innocent.[26]

    During trial, the jury heard testimony from Officer Nicholas Gremillion, who recounted the petitioner's statement to police:

    Q:  And after you read him his Rights, did you have a chance to talk to him?

    A:  I asked him if he – wanted to tell me anything, you know, about the incident. He said that he never –he said—he said he didn't do anything to her. All he did was—he liked to love her, and he rubbed her back—and he

---

[25] R. Doc. 7, pp. 56-57.
[26] R. Doc. 1-2, p. 41.

liked to rub her on her back—he like to rub her on her back and stuff like that…

Q:     He didn't do anything else, but those are the things he said he did?

A:     Yes.[27]

On direct appeal, the First Circuit concluded there was ample evidence for the jury to conclude that the petitioner committed the aggravated rape of S.G.:

> The state played for the jury two recorded interviews of S.G. in which she indicated that [the petitioner] had, on multiple occasions, sexually abused her when she was between the ages of seven and ten years old. S.G. described that [the petitioner] performed oral sex on her, forced her to perform oral sex on him, touched his "private" to her "private," and engaged in other forms of inappropriate fondling. S.G.'s statements in these two interviews were consistent with each other and with testimony that she gave at trial. The results of S.G.'s physical exam, taken several months after the abuse had ended, revealed "normal" findings. …[T]he state presented expert testimony to demonstrate that it is not unusual for child victims of sexual assault to display no signs of physical trauma…
>
> The evidence presented at trial supports the jury's verdict. Viewed in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that [the petitioner] was guilty of aggravated rape. The victim's testimony alone was sufficient to prove the elements of the offense.

*State v. Griffin*, 2015-1765 (La. App. 1 Cir. 4/27/16), 2016 WL 2840309 *2.

The jury found the petitioner guilty after hearing the victim's testimony and testimony that the petitioner denied committing the crime in his statement to the police. There is no basis for concluding that the petitioner's additional declaration of innocence would have resulted in a different outcome. The trial court's decision that Claim 4 lacked merit was neither contrary to nor an unreasonable application of federal law.

---

[27] R. Doc. 9, p. 191.

**Certificate of Appealability**

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 2, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

17